**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| FINOVA CAPITAL CORPORATION | : | Case Nos. 01-0698 (PJW) |
|  | : |  |
| Reorganized Debtor | : | Jointly Administered |
|  | : |  |
| _____ | : |  |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL
FROM THE DECISION OF THE BANKRUPTCY COURT**

William D. Sullivan (No. 2820)
BUCHANAN INGERSOLL
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
Telephone: (302) 428-5523
Facsimile: (302) 428-3996

-- and --

Mark D. Silverschotz
James M. Andriola
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020-1182
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

## **TABLE OF CONTENTS**

Page

THE MOTION.......................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................. 2

STATEMENT OF FACTS ...................................................................................................... 3

QUESTIONS TO BE RAISED ON APPEAL ....................................................................... 6

REASONS WHY APPEAL SHOULD BE GRANTED ....................................................... 7

ARGUMENT .......................................................................................................................... 11

I.      THE CLARIFICATION ORDER IS A FINAL ORDER................................ 11

II.     LEAVE SHOULD BE GRANTED ..................................................................... 14

CONCLUSION ....................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

Page

### FEDERAL CASES

Amadeus Global Travel Distributing, S.A. v. Orbitz, LLC, 302 F. Supp. 2d 329 (D. Del. 2004) ......................................................................................................................13

In re Armstrong World Industries, Inc., No. 05-1881, 2005 WL 3544810 (3d Cir. Dec. 29, 2005)…………………………………………………………………1, 11, 12

Belli v. Temkin (In re Belli), 268 B.R. 851 (9th Cir. BAP 2001) ..................................11

Bowie Produce Co. v. Magic America Cafe, Inc. (In re Magic Restaurants, Inc.), 202 B.R. 24 (D. Del. 1996)..........................................................................................14

Brass v. America Film Techs., Inc., 987 F.2d 142 (2d Cir. 1993)....................................8

In re Bridgeport Nurseries, Inc., 190 B.R. 215 (Bankr. D. N.J. 1996)……………………..........2

Catlin v. U.S., 324 U.S. 229 (1945)................................................................................11

Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94 (3d Cir. 1988) ...............2

In re Commercial Mill Wright Serv. Corp., 245 B.R. 585 (Bankr. N.D. Iowa 1998) ..................12

Dal-Tile International, Inc. v. Color Tile, Inc., 203 B.R. 554 (D. Del. 1996) ..............................14

In re Eagle Enterprises Inc., 265 B.R. 671 (E.D. Pa. 2001)............................................12

Elliott v. Four Seasons Properties (In re Frontier Properties Inc.), 979 F.2d 1358 (9th Cir. 1992) .....................................................................................................................11

In re Ernst, 45 B.R. 700 (Bankr. D. Minn. 1985) .........................................................9

First American Bank of New York v. Century Glove, Inc., 64 B.R. 958 (D. Del. 1986) .............14

Hionis International Enterprises, Inc. v. Tandy Corp., 867 F. Supp. 268 (D. Del. 1994) ............13

Hylland v. Northwestern Corp. (In re Northwestern Corp.), 319 B.R. 68 (D. Del. 2005) ............12

Kreiss v. McCown De Leeuw & Co., 131 F. Supp. 2d 428 (S.D.N.Y. 2001) ................................8

Leslie Fay, Inc. v. Rich, 478 F. Supp. 1109 (S.D.N.Y. 1979) .......................................13

Maquoketa State Bank v. Hayes, 220 B.R. 57 (Bankr. N.D. Iowa 1998)......................................11

## TABLE OF AUTHORITIES (cont'd)

Page

Metzker v. International Paper Co., 825 F. Supp. 641 (D. Del. 1993) ...........................................13

In re NVF Co., 309 B.R. 698 (Bankr. D. Del. 2004) ....................................................................12

National Union Fire Insurance Co. of Pittsburgh, PA v. Walton Insurance Ltd., 696 F.
    Supp. 897 (S.D.N.Y. 1988)....................................................................................................13

Official Bondholders Committee v. Chase Manhattan Bank (In re Marvel Entertainment
    Group, Inc.), 209 B.R. 832 (D. Del. 1997) ......................................................................14, 19

Sergi v. Everett Sav. Bank (In re Sergi), 233 B.R. 586 (1st Cir. BAP 1999)...........................2, 12

In re Sugarhouse Realty, Inc., 192 B.R. 355 (E.D. Pa. 1996) ......................................................12

U.S. v. Pelullo, 178 F.3d 196 (3d Cir. 1999) ...............................................................................12

In re West Electrics, Inc., 852 F.2d 79 (3d Cir. 1998)..................................................................12

### STATE CASES

Fulweiler v. Spruance, 222 A.2d 555 (Del. Ch. 1966) ...................................................................9

General Phoenix Corp. v. Cabot, 300 N.Y. 87, 89 N.E.2d 238 (N.Y. 1949)................................13

Grossman Steel & Aluminum Corp. v. Samson Window Corp., 54 N.Y.2d 653, 426
    N.E.2d 176, 442, N.Y.S.2d 769 (N.Y. 1981)...........................................................................7

Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 660
    N.E.2d 415, 636 N.Y.S.2d 734 (N.Y. 1995)............................................................................8

Reape v. New York News, Inc., 122 A.D.2d 29, 504 N.Y.S.2d 469 (NYAD 2d Dep't
    1986) .......................................................................................................................................9

Rowe v. Great Atlantic & Pacific Tea Co., Inc., 46 N.Y.2d 62, 385 N.E.2d 566, 412
    N.Y.S.2d 827 (N.Y. 1978) .......................................................................................................7

Twin City Fire Insurance Co. v. Delaware Racing Association, 840 A.2d 624 (Del. Supr.
    2003) .......................................................................................................................................9

Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 807 N.E.2d
    876, 775 N.Y.S.2d 765 (N.Y. 2004) ........................................................................................7

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page</u>

**FEDERAL STATUTES**

28 U.S.C. §158(a) ....................................................................................................1, 11, 14

**STATE STATUTES**

8 Del. Code Ann. § 170 ...............................................................................................10

**MISCELLANEOUS**

<u>Edith H. Jones, Bankruptcy Appeals,</u> 16 T. Marshall L. Rev. 245, 253 (1991) ............................11

## THE MOTION

Pursuant to 28 U.S.C. §158(a) and Rule 8003 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Equity Security Holders (the "Equity Committee"), on behalf of the shareholders (the "Equity Security Holders") of Finova Group, Inc., the corporate parent of the above captioned reorganized debtor (the "Reorganized Debtor"), by and through its undersigned counsel, submits this memorandum of law in support of its motion for leave to appeal from an order of the Bankruptcy Court for the District of Delaware (Walsh J.) entered on February 1, 2006 and entitled Order Regarding Debtors' Motion Requesting Clarification of Confirmed Chapter 11 Plan (the "Clarification Order").[1]  The Equity Committee believes that the Clarification Order is *final* under the Third Circuit's flexible, pragmatic approach (See In re Armstrong World Indus., Inc., No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005)) and that the instant motion is not necessary.  As stated below, this appeal involves a purely legal issue of a Debtor's right, in effect, to modify through "clarification" the provisions of a confirmed and substantially consummated Plan as the consequence of unforeseen and unanticipated events.  The Equity Committee submits this motion out of an abundance of caution in the event this Court does not believe the Clarification Order is a final order appealable as of right.  In the event this Court finds that the Clarification Order is interlocutory in nature, the Equity Committee submits that, for the reasons set forth herein, this Court should grant leave to hear the appeal.

---

[1]  Annexed hereto are copies of:  (i) the Clarification Order [Ex. A]; (ii) the Transcript of Hearing before the Honorable Peter J. Walsh on November 30, 2005 at 2:30 p.m. (Court's oral ruling appears at pp. 52-57) [Ex. B]; and (iii) the Bankruptcy's Court's Letter to Counsel, Dated December 2, 2005, with respect to Court's Ruling on the Reorganized Debtor's Motion for an Order Clarifying the Confirmed Plan (the "Supplemental Letter")[Ex. C].  Also annexed hereto is the Equity Committee's response to the Supplemental Letter [Ex. D].  While this response is not a formal part of the ruling below from which this appeal is taken, the Equity Committee believes that at this time it should be presented to this Court for the sake of clarity and completeness.

## PRELIMINARY STATEMENT

In addressing the Clarification Motion, the Bankruptcy Court was required to interpret the terms of the Plan (defined herein) and the Indenture (defined herein) "pursuant to relevant rules of contract interpretation and construction."  Sergi v. Everett Sav. Bank (In re Sergi), 233 B.R. 586, 589 (1st Cir. BAP 1999)(citations omitted).  The relevant rules of contract interpretation in this case being those imparted by New York law.[2]  Despite such a requirement, the Bankruptcy Court approved the clarification sought by the Reorganized Debtor without conducting the requisite analysis of the terms of the Plan and Indenture under New York law.  Rather, as this Court can see from the transcript excerpt attached hereto, the Bankruptcy Court based its decision for the most part on a mistaken interpretation of certain isolated provisions in the Disclosure Statement, and made only passing mention of the relevant provisions of the operative Plan and Indenture.  This in and of itself constitutes reversible error since it is well-settled that unlike the terms of a plan and any incorporated supplement thereto, the terms of a disclosure statement are not contractual in nature and do not bind the parties.  In re Bridgeport Nurseries, Inc., 190 B.R. 215 (Bankr. D. N.J. 1996) (citing, Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94 (3d Cir. 1988)).

Moreover, as set forth herein (and as will be more fully presented in movant's appellate brief), had the Bankruptcy Court correctly applied the well-established principles of New York contract interpretation law, it could not have approved the clarification sought by the Reorganized Debtor.  As such, the Bankruptcy Court committed reversible error.

---

[2]  In this case, there was no dispute that, based on express provisions in both the Plan and Indenture, New York law was to be applied in construing the documents at issue.

## STATEMENT OF FACTS

On or about May 2, 2001, the Reorganized Debtor (and related companies) filed their plan of reorganization (together with all subsequent amendments thereto, the "Plan"), which this Court confirmed by order dated August 10, 2001.  The Plan had a supplement (the "Plan Supplement"), which included an Indenture between the Finova Group, Inc. and The Bank of New York, as Trustee, dated as of August 22, 2001 (the "Indenture") respecting certain notes (the "New Senior Notes") issued under the Plan to certain of Finova's creditors.  The Indenture defined the parties rights to proceeds from the liquidation of the Reorganized Debtor's assets.  Pursuant to the confirmation order, the Plan Supplement (and therefore the Indenture) was incorporated into and made part of the Plan.

It is not disputed that the Indenture sets forth a series of provisions which govern the use of cash by the Reorganized Debtor.  Payments under the Indenture were to be made to Plan beneficiaries under a series of "waterfall" provisions, which provide that when the payment obligations of a particular level are completed, payments are then directed to the next lower level.  The "waterfall" of anticipated, potential Plan-based payments is set forth in Section 4.06(a) of the Indenture.  It is also not disputed that to date cash has been applied to the first four waterfall levels as set forth at Sections 4.06(a)(i)-(iv).  In fact, in February 2004 (approximately two years before the maturity date), the Reorganized Debtor fully repaid the loan (the "Berkadia Loan") described in the fourth waterfall provision.  Indenture at § 4.06(a)(4).

The provision at issue in this case is the *fifth* waterfall provision, Section 4.06(a)(v), which states in its entirety:

> FIFTH, until the principal of and Fixed Interest on the Notes are each paid in full, to (A) pay to the Company, when due, principal on the Intercompany Notes in an amount equal to the amount of cash and Cash Equivalents of the Company and its Subsidiaries, after deducting for items (i) through (iv) above, at any date (as determined by the Company) on or

3

after the applicable Reference Date, which amounts the Company shall use together with any other cash or Cash Equivalents the Company has available for such purpose on such date to repay principal of the Notes until the principal and accrued and unpaid Fixed Interest have been paid in full, and, at the Company's option, to make prepayments at any time of principal and accrued and unpaid interest on the Intercompany Notes, which amounts the Company shall use together with any other cash or Cash Equivalents the Company has available for such purpose on such date to prepay all or part of the principal and accrued and unpaid Fixed Interest on the Notes pursuant to Section 3.07, and (B) to make distributions in respect of FINOVA Capital's Equity Interests held by the Company, which amounts the Company shall use together with any other cash the Company has available for such purposes to make Restricted Payments unless either (x) the making of any such Restricted Payment would be an Impermissible Restricted Payment, in which event the Company shall retain such amounts and any such retained amounts shall accumulate and shall be used to make Restricted Payments at such time or from time to time when such Restricted Payments are not Impermissible Restricted Payments, or (y) a Default or Event of Default has occurred and is continuing, in which event the Company shall retain such amounts and any such retained amounts shall accumulate and shall, subject to Article 6 hereof, be used to make such Restricted Payments at such time or from time to time when such Default or Event of Default is no longer continuing; provided, however, that each incremental payment of $0.95 pursuant to clause (A) shall require a distribution or retention pursuant to clause (B) of $0.05.

Pursuant to Section 4.06(a)(v)(A), the Reorganized Debtor has made principal payments in excess of $1.1 billion on the New Senior Notes, and, pursuant to Section 4.06(a)(v)(B) respecting the rights of Equity Security Holders, the Reorganized Debtor has retained approximately $65.5 million in a segregated account. This conforms with the obligation "that each incremental payment of $0.95 [to note holders] pursuant to clause (A) shall require a distribution or retention pursuant to clause (B) of $0.05 [to Equity Security Holders]." Indenture at § 4.06(a)(v).

The Reorganized Debtor, however, has not transferred and will not transfer the funds held in the segregated account to the Equity Security Holders because it has decided that such a transfer would at this time, and for perpetuity, be an "Impermissible Restricted Payment"

4

under the Indenture.  Under the Indenture, an "'Impermissible Restricted Payment' means a Restricted Payment that, if made by the [Reorganized Debtor], would render such entity insolvent, would be a fraudulent conveyance by such entity or would not be permitted to be made by such entity under applicable law."  Indenture at p. 6.  Under the Indenture, a "'Restricted Payment' means the declaration or payment of any dividend or the making of a distribution on account of the [Reorganized Debtor's] Equity Interests…"  Indenture at p. 11.

On or about April 1, 2005, the Reorganized Debtor filed its *Motion of the Reorganized Debtor for an Order Under Bankruptcy Code Section 1141 Clarifying Provision of Confirmed Plan*, dated April 1, 2005 (the "Clarification Motion").  By the Clarification Motion, the Reorganized Debtor sought an Order of the Bankruptcy Court permitting it to cease distributing cash to, or retaining cash on behalf of, the Equity Security Holders.  The Reorganized Debtor also asked the Bankruptcy Court to enter an order which would effect a forfeiture of all rights that the Equity Security Holders may have to the approximately $65 million being held on their behalf in a segregated account.

At a hearing on June 10, 2005, the Court appointed an Official Committee of Equity Security Holders for the limited purpose of responding to the Clarification Motion.  On October 18, 2005, the Equity Committee filed a brief opposing the Clarification sought by the Reorganized Debtor.

The dispute between the parties before the Bankruptcy Court (and on appeal) may be put as follows:  the Reorganized Debtor believes any distributions to Equity Security Holders under the fifth waterfall payment provision of the Indenture would be Impermissible Restricted Payments, and believes further that such status is permanent.  The Equity Committee believes that these distributions were (and are) on account of the Reorganized Debtor's Plan-based

contractual debt obligations and, therefore, are not Impermissible Restricted Payments. Significantly, under the Reorganized Debtor's theory, its present and future insolvency *must* be found in order for it to prevail. Conversely, the Reorganized Debtor's solvency or insolvency is irrelevant to the Equity Committee's analysis.[3]

On November 29, 2005, the Bankruptcy Court heard argument, and rendered a decision respecting, the Clarification Motion. On February 1, 2006, and for the reasons set forth on the record on November 29, 2005, and in the Supplemental Letter, the Bankruptcy Court ordered that "the Clarification Motion is hereby APPROVED to the extent that the Debtor is presently and will be forever insolvent" (the "Clarification Order"). The Clarification Order goes on to state that "[n]othing in this order shall be construed as a finding that the Debtors presently are or will forever be insolvent."

As stated above, and expounded upon below, the lack of a determination as to whether or not the Reorganized Debtor is in fact currently or forever "insolvent," will not prohibit this Court from reversing the Bankruptcy Court's decision, denying the Clarification Motion and precluding any further litigation.

<u>**QUESTIONS TO BE RAISED ON APPEAL**</u>

The main question to be raised on appeal is whether the Bankruptcy Court erred in approving the Clarification Motion requested by the Reorganized Debtor. In addressing this question, this Court will be asked to determine whether the Bankruptcy Court erred in misapprehending or simply overlooking the cogent grounds presented by the Equity Committee (as set forth in the next section) for denying the Clarification Motion.

---

[3] In light of the limited budget provided to the Equity Committee by the Bankruptcy Court, the Equity Committee did not expend substantial funds in pursuit of a plenary forensic accounting analysis of Finova's books and records. Given its view that solvency is of no moment, such expenditure would have been wasteful at best.

## REASONS WHY APPEAL SHOULD BE GRANTED

Before the Bankruptcy Court, the Equity Committee demonstrated a number of distinct and independently sufficient grounds which existed for denying the requested relief. None of these grounds required a determination as to whether or not the Reorganized Debtor is and forever will be insolvent, a determination which may be impossible to make:

I.    The Reorganized Debtor did not (and could not) cite to any actual provision or language in the controlling Plan and Indenture that would support its position that the Equity Security Holders must now forfeit the funds set aside on their behalf. Rather, the Reorganized Debtor was left to argue merely that such a forfeiture is "implicit." The controlling documents – the Plan and the Indenture – each dictate that for every $0.95 of available cash that is used to pay principal and interest on the New Senior Notes, $0.05 must be distributed to, or retained on behalf of, the Equity Security Holders. This consideration was given to the Equity Security Holders under the Plan to which their class consented. As a matter of controlling New York State hornbook contract law, the Bankruptcy Court should not have taken away such consideration as the consequence of an inference.

In granting the Clarification Motion, the Bankruptcy Court misapprehended or overlooked the contrary plain language of the Plan and Indenture as well as the teachings of: Rowe v. Great Atlantic & Pacific Tea Co., Inc., 46 N.Y.2d 62, 72, 385 N.E.2d 566, 572, 412 N.Y.S.2d 827, 833 (N.Y. 1978) ("courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include."); Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 807 N.E.2d 876, 879, 775 N.Y.S.2d 765, 767-68 (N.Y. 2004) (holding that "when parties set down their agreement in a clear, complete document, their writing should…be enforced according to its terms"); Grossman Steel & Aluminum Corp. v. Samson Window Corp., 54 N.Y.2d 653, 654,

426 N.E.2d 176, 177, 442, N.Y.S.2d 769, 770 (N.Y. 1981) ("disputed language…of the contract did not create a condition precedent to payment to the subcontractor, but rather established a time for payment."); Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 691, 660 N.E.2d 415, 418, 636 N.Y.S.2d 734, 737 (N.Y. 1995) (New York courts should avoid interpreting "doubtful language" in a contract to be an express condition precedent "when a finding of [such] an express condition [precedent] would increase the risk of forfeiture by the obligee.").

II.    Well-settled principles of the law of contract interpretation prohibited the "clarification" proposed by the Reorganized Debtor.  While studiously avoiding use of the term "ambiguous," the Reorganized Debtor admitted that the Indenture was ambiguously drafted in that "it did not describe what would happen to the amounts retained by FNV Group," that would have otherwise been distributed to Equity Security Holders but for certain financial conditions alleged by the Reorganized Debtor to currently exist.  The Reorganized Debtor then asked the Bankruptcy Court to issue an order directing that the amounts retained on account of the Equity Security Holders under the terms of the Indenture be returned to the Reorganized Debtor "for use in its business to pay expenses, debts and other obligations."  Thus, the Clarification Motion sought to impose a forfeiture based on an ambiguity in the contract the Debtor drafted.

By approving the Reorganized Debtor's clarification, the Court impermissibly effected a forfeiture and incorrectly interpreted an ambiguous contract provision in favor of the party that drafted that provision.  This determination runs counter to the following authorities: Brass v. Am. Film Techs., Inc., 987 F.2d 142, 149 (2d Cir. 1993) (holding a contract to be ambiguous where there was "nothing said in the contract" about whether stock shares to be reserved were to be restricted or unencumbered); Kreiss v. McCown De Leeuw & Co., 131

F.Supp.2d 428, 436 (S.D.N.Y. 2001) ("New York courts will not interpret provisions that are ambiguous on their face to effect a forfeiture…."); <u>Reape v. New York News, Inc.</u>, 122 A.D.2d 29, 30, 504 N.Y.S.2d 469, 470 (NYAD 2d Dep't 1986) and <u>Twin City Fire Ins. Co. v. Delaware Racing Ass'n</u>, 840 A.2d 624, 630 (Del. Supr. 2003) (noting that the well-accepted doctrine of construction, <u>contra</u> <u>preferentem,</u> is that ambiguities in a contract should be construed against the drafter).

III.    The Reorganized Debtor is unable to rebut the inarguable proposition that the confirmed Plan created binding payment obligations owed by the Reorganized Debtor to, among others, the Equity Security Holders.  In granting the clarification, the Bankruptcy Court failed to appreciate:  (a) that the Plan constituted a new contract between the Reorganized Debtor and, <u>inter</u> <u>alia</u>, the Equity Security Holders; (b) that pursuant to this new contract (the Plan), the Reorganized Debtor became obligated to make certain payments to Equity Security Holders (and the Equity Security Holders were given the right to such payment); and (c) that such obligations and rights of the respective parties created new "debt" running from the Reorganized Debtor to the Equity Security Holders.  The Bankruptcy Court also misapprehended or overlooked the apposite cases cited by the Equity Committee, including:  <u>In re Ernst</u>, 45 B.R. 700, 702 (Bankr. D. Minn. 1985) ("[t]he effect of confirmation is to discharge the entire preconfirmation debt, replacing it with a new indebtedness as provided in the confirmed plan."); and <u>Fulweiler v. Spruance</u>, 222 A.2d 555 (Del. Ch. 1966) (holding that where a company makes a partial payment of income-producing assets to its equity pursuant to a Court order and not as ordinary or extra-ordinary dividend, the resulting income is not properly characterized as a "dividend at all.").  It is well-settled that the contractual provisions of a plan cannot be modified where, as here, the Plan has been substantially consummated.  11 U.S.C. §1127(b).

IV.     Contrary to the Reorganized Debtor's assertion, the distributions to the Equity Security Holders set forth in the Plan and Indenture are not Impermissible Restricted Payments, as that term is defined in the Indenture because such payments merely fulfill the debt obligations set forth in the Plan and Indenture.  For example, the Reorganized Debtor asserted that a transfer of the funds to the Equity Security Holders would be an Impermissible Restricted Payment because an entity in its alleged financial condition may not declare "dividends" under Delaware law.  The Equity Committee, however, established (and the Bankruptcy Court ignored) that the state-law prohibition on payment of dividends does not apply to an "obligation of the corporation paid by it as a dividend on shares of its stock … if at the time such … obligation was delivered by the corporation, the corporation has either surplus or net profits … from which the dividend could lawfully have been paid."  8 DEL. CODE ANN. § 170.  This exception was meant to stop exactly what the Reorganized Debtor is attempting to do in this case since the Reorganized Debtor had a surplus when it agreed to make certain distributions to equity under the Plan and emerged from bankruptcy.

Fundamentally, through the Clarification Motion, the Debtor sought to re-write the Plan to shift the risk of unforeseen, catastrophic events in a manner contrary to the Plan's operative provisions.  The debt obligations set forth in the Plan were established at a time when the Debtors were fully solvent.  It is undisputed that the Debtor was drastically affected by the post-confirmation events of September 11, 2001.  Nevertheless, while 9/11 changed the consequences of the Plan's operation, it should not have changed the terms of its operation, and the Bankruptcy Court erred in changing those terms through the granting of the Clarification Motion.

Each of these grounds will be more fully explained in a brief on appeal.

<u>**ARGUMENT**</u>

**I.    <u>THE CLARIFICATION ORDER IS A FINAL ORDER</u>**

Section 158 of the Judicial Code provides, in pertinent part, that the "district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, order, and decrees…and (3) with leave of the court, from other interlocutory orders and decrees…."  28 U.S.C. § 158(a); <u>see also</u> <u>Maquoketa State Bank v. Hayes</u>, 220 B.R. 57, 59 (Bankr. N.D. Iowa 1998) (noting that "a litigant has the right to appeal final orders and decrees of the bankruptcy court…and may seek leave to appeal interlocutory (which is to say, non-final) orders and decrees").  As the United States Bankruptcy Appellate Panel of the Ninth Circuit observed: "Applying the concept of finality under 28 U.S.C. § 158(a)(1) for appeals 'as of right' has bedeviled courts because the idiosyncrasies of bankruptcy sometimes make it difficult to discern whether orders entered in bankruptcy cases are final in the classic sense of ending litigation on the merits and leaving nothing for the court to do but execute the judgment."  <u>Belli v. Temkin (In re Belli)</u>, 268 B.R. 851, 854 (9th Cir. BAP 2001) (citing <u>Catlin v. U.S.</u>, 324 U.S. 229, 233 (1945); <u>Elliott v. Four Seasons Props. (In re Frontier Props. Inc.)</u>, 979 F.2d 1358, 1362-64 (9th Cir. 1992); Edith H. Jones, *Bankruptcy Appeals*, 16 T. Marshall L. Rev. 245, 253 (1991)).

The Third Circuit recently explained that "[i]n bankruptcy cases, finality is construed more broadly than for other types of civil cases.  Because bankruptcy proceedings are often protracted, and time and resources can be wasted if an appeal is delayed until after a final disposition, our policy has been to quickly resolve issues central to the progress of a bankruptcy."  <u>In re Armstrong World Indus., Inc.</u>, No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005) (citations omitted); <u>see also</u> <u>Belli</u>, 268 B.R. at 854 (discussing Ninth Circuit's pragmatic "flexible finality" approach to appellate jurisdiction under 28 U.S.C. § 158(a)(1)).  As such, "[i]n the context of bankruptcy appeals, the Third Circuit has set forth a

flexible, pragmatic approach to determining whether an order of the Bankruptcy Court is final." Hylland v. Northwestern Corp. (In re Northwestern Corp.), 319 B.R. 68, 72 (D. Del. 2005).

Under the Third Circuit's flexible, pragmatic approach, the district court "may consider a variety of factors including but not limited to (1) whether the order leaves additional work to be done by the Bankruptcy Court; (2) whether the order implicates purely legal issues; (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate; (4) the necessity for further fact-finding on remand to the Bankruptcy Court; (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy." Northwestern Corp., 319 B.R. at 72 (citing U.S. v. Pelullo, 178 F.3d 196, 200-201 (3d Cir. 1999); In re West Elecs., Inc., 852 F.2d 79, 81 (3d Cir. 1998); In re Eagle Enters. Inc., 265 B.R. 671, 677 (E.D. Pa. 2001)); see also Armstrong, 2005 WL 3544810, at *3 (listing similar factors for determining whether a district court's decision is final). "A particular number or combination of factors is not required for the Court to conclude that an order is final and appealable." Northwestern Corp., 319 B.R. at 72.

The Equity Committee submits that under the foregoing test, the Clarification Order should be treated as final and therefore appealable as of right. The Clarification Order serves to interpret and modify the operation of the Plan, and is the product of the purely legal function of contract interpretation. It is well-settled that a "confirmed plan of reorganization is a binding contract…[which] is subject to interpretation pursuant to relevant rules of contract interpretation and construction." In re Sergi, 233 B.R. 586, 589 (1st Cir. BAP 1999) (citing In re Sugarhouse Realty, Inc., 192 B.R. 355, 362 (E.D. Pa. 1996)); see also In re NVF Co., 309 B.R. 698, 701 (Bankr. D. Del. 2004) (noting that a confirmed plan becomes a legally binding agreement); In re Commercial Mill Wright Serv. Corp., 245 B.R. 585, 593 (Bankr. N.D. Iowa

1998) (stating that "[i]n discerning the meaning of a plan, general rules of contract interpretation apply").

It is equally well-established that "the interpretation of contracts is a matter of law for the court to determine." Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC, 302 F. Supp. 2d 329 (D. Del. 2004); see also Metzker v. Int'l Paper Co., 825 F. Supp. 641, 645 (D. Del. 1993) ("Interpretation of language in a contract…is treated as a question of law both in the trial court and on appeal." (internal quotation marks and citations omitted)); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Walton Ins. Ltd., 696 F. Supp. 897, 901 (S.D.N.Y. 1988) ("[W]here ⋯'the intention of the parties may be gathered from the four corners of the instrument'…'interpretation of the contract is a question of law [and] no trial is necessary to determine the legal effect of the contract.'" (quoting Leslie Fay, Inc. v. Rich, 478 F. Supp. 1109, 1113-14 (S.D.N.Y. 1979), in turn quoting General Phoenix Corp. v. Cabot, 300 N.Y. 87, 92, 89 N.E.2d 238, 241 (N.Y. 1949))); Hionis Int'l Enters., Inc. v. Tandy Corp., 867 F. Supp. 268, 272 (D. Del. 1994) ("If a court can interpret a contract's meaning with certainty, there is no ambiguity; and the construction of the contract becomes a matter of law.")  Therefore, it follows that the interpretation of language in a plan of reorganization is a legal issue for the court to determine.

In addition, there is currently no additional work to be done by the Bankruptcy Court.  There is always the possibility that the Reorganized Debtor will commence an adversary proceeding through which it will attempt to demonstrate to the Bankruptcy Court that it is forever insolvent, but no such proceeding has been commenced.  It is uncertain when or whether such a finding can ever properly be made.  More importantly, since the ruling sought by the Equity Committee does not require a determination as to the solvency of the Reorganized

Debtor, the Bankruptcy Court's decision can be reviewed without further fact finding or a potential remand.

Based on the foregoing, the Equity Committee respectfully requests that this Court treat the Clarification Order as final.

## II.  LEAVE SHOULD BE GRANTED

In the event this Court does not treat the Clarification Order as final, the Equity Committee submits that the Court should grant leave to hear the appeal 28 U.S.C. § 158(a) and Rule 8003 of the Federal Rules of Bankruptcy Procedure.  Neither of those sections "set forth criteria for district courts to evaluate in determining whether to grant leave to appeal interlocutory bankruptcy orders."  Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entm't Group, Inc.), 209 B.R. 832, 837 (D. Del. 1997).  Nevertheless, "this Court has held that the standards set forth in 28 U.S.C. § 1292(b) governing interlocutory appeals from district courts to United States courts of appeals shall apply."  Dal-Tile Int'l, Inc. v. Color Tile, Inc., 203 B.R. 554, 557 (D. Del. 1996).  "Under § 1292(b) leave to file an interlocutory appeal can be granted when the order at issue (1) involves a controlling question of law upon which there is (2) substantial difference of opinion, and (3) when immediate appeal from the order may materially advance the ultimate termination of the litigation."  Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Restaurants, Inc.), 202 B.R. 24, 26 (D. Del. 1996) (citing First American Bank of New York v. Century Glove, Inc., 64 B.R. 958, 962 (D. Del. 1986)).

It is beyond dispute that the Equity Committee seeks to appeal a controlling question of law:  the Bankruptcy Court's *legal* interpretation of the Plan and Indenture.  See Marvel, 209 B.R. at 837 ("[a] controlling question of law at the very least encompasses a ruling which, if erroneous, would be reversible error on final appeal.").  As for the second factor (i.e., the requirement that there be substantial difference of opinion as to a controlling issue of law),

the District Court for the District of Delaware has held that this requirement is satisfied where the appellant demonstrates that the bankruptcy court's decision is contrary to well-established law.  Marvel, 209 B.R. at 837-38.  As touched upon above, and as will be set forth more fully in a brief on appeal, the Bankruptcy Court's decision is contrary to well-established law for a number of reasons.

Finally, as discussed more fully in the preceding section on finality, it is clear that an immediate appeal from the Clarification Order is likely to materially advance the ultimate termination of the litigation.

It is anticipated that the Reorganized Debtor will argue that the Clarification Order is not final and that this Court should not treated it as such, thereby putting off an appeal until after the Reorganized Debtor obtains a determination that it is insolvent.  Under this approach, the parties would have to invest the time and money involved in an insolvency determination, when it is possible that this Court may reverse the Bankruptcy Court on purely legal issues.  The Equity Committee submits that the Court should not adopt such a potentially wasteful approach.

## CONCLUSION

For the reasons set forth herein, the Equity Committee respectfully requests that this Court determine that the Clarification Order is a "final" order appealable as of right.  In the alternative, the Equity Committee respectfully requests that this Court grant it leave to appeal from the Clarification Order.

*(signature block on following page)*

Dated:    February 10, 2006
          Wilmington, Delaware

                                        **BUCHANAN INGERSOLL**

                                        */s/ William D. Sullivan*
                                        William D. Sullivan (No. 2820)
                                        The Nemours Building
                                        1007 N. Orange Street, Suite 1110
                                        Wilmington, DE  19801
                                        Tel:  (302) 428-5523
                                        Fax:  (302) 428-3996
                                        email: sullivanwd@bipc.com

                                                -- and --

                                        **ANDERSON KILL & OLICK, P.C.**
                                        Mark D. Silverschotz
                                        James M. Andriola
                                        1251 Avenue of the Americas
                                        New York, NY  10020-1182
                                        (212) 278-1000