# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **FINOVA CAPITAL CORPORATION** | Case Nos. 01-0698 (PJW) |
| | Jointly Administered |
| Reorganized Debtor. | |
| | **Re. Docket Nos. 102 and 104** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND ANSWER IN OPPOSITION TO MOTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITIES HOLDERS FOR LEAVE TO APPEAL BANKRUPTCY COURT'S ORDER REGARDING DEBTORS' MOTION REQUESTING CLARIFICATION OF CONFIRMED CHAPTER 11 PLAN

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Telecopy: (302) 651-7701

-and-

Jonathan M. Landers
Janet M. Weiss
Jessica I. Basil
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Telecopy: (212) 351-4035

Co-counsel to the Reorganized Debtor

Dated: February 24, 2006

RLF1-2984626-1

## TABLE OF CONTENTS

Page

**BACKGROUND** ........................................................................................................................ 3

**ARGUMENT** ............................................................................................................................. 5

**I. THE CLARIFICATION ORDER IS NOT A FINAL ORDER** ............................................. 5

    A.    There is No Reason to Apply a More Flexible Approach to Finality
            in this Case ................................................................................................... 6

    B.    The Finality of the Issues Raised in the Clarification Motion Needs to be
            Determined by the Same Standard as Used in General Civil Litigation ............... 7

    C.    Even if the Pragmatic Standard is Applied, the Clarification Order is
            Not a Final Order ......................................................................................... 9

**II. LEAVE SHOULD NOT BE GRANTED** .......................................................................... 10

**CONCLUSION** ...................................................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**                                         **Page**

*In re Armstrong World Indus., Inc.*,
432 F.3d 507 (3d Cir. 2005)..................................................................................6, 7

*Catlin v. United States*,
324 U.S. 229 (1945).....................................................................................................8

*Century Glove, Inc. v. First American Bank of New York*,
860 F.2d 94 (3d Cir. 1988).......................................................................................10

*In re First American Bank of New York v. Century Glove, Inc.*,
64 B.R. 958 (D. Del. 1986).......................................................................................11

*In re Edison Brothers Stores, Inc.*,
1996 U.S. Dist. LEXIS 9061 (D. Del. 1996)..........................................................11

*In re Jeannette Corporation*,
832 F.2d 43 (3d Cir. 1987)..................................................................................7, 10

*In the Matter of Magic Restaurants, Inc.*,
202 B.R. 24 (D. Del. 1996).........................................................................10, 11, 12

*In re Meyertech*,
831 F.2d 410 (3d Cir. 1987).....................................................................................10

*In re Ronald L. Natale*,
295 F.3d 375 (3d Cir. 2002)..............................................................................2, 7, 8

*In re Northwestern Corp.*,
319 B.R. 68 (D. Del. 2005).........................................................................................6

*Penn West Associates, Inc. v. Katherine Cohen*,
371 F.3d 118 (3d Cir. 2004).......................................................................................8

*U.S. v. Pelullo*,
178 F.3d 196 (3d Cir. 1999).......................................................................................9

*In re West Electronics, Inc.*,
852 F.2d 79 (3d Cir. 1988).........................................................................................9

*In re White Beauty View, Inc.*,
841 F.2d 524 (3d Cir. 1988).......................................................................................7

## **STATUTES**

28 U.S.C. § 1292(b) ................................................................................................................10

28 U.S.C. § 158(a) ........................................................................................................5, 10, 12

## MOTION TO STRIKE AND ANSWER IN OPPOSITION

Finova Capital Corporation, the above-captioned reorganized debtor (the "Reorganized Debtor") hereby submits this memorandum of law in support of (i) its motion to strike the *Notice of Appeal* filed by the Official Committee of Equity Securities Holders (the "Equity Committee") on the ground the order appealed from is not a final order appealable as of right, and (ii) its opposition to the *Motion of the Official Committee of Equity Securities Holders for Leave to Appeal Bankruptcy Court's Order Regarding Debtors Motion Requesting Clarification of Confirmed Chapter 11 Plan* (the "Motion for Leave to Appeal") on the ground that there are no exceptional circumstances justifying an appeal at this juncture.

In seeking an order of the Bankruptcy Court clarifying certain provisions of its confirmed Plan,[1] the Reorganized Debtor argued that (1) certain payments to the holders of equity interests could not be made if the payments would render the Reorganized Debtor insolvent, would be a fraudulent conveyance, or would be illegal under applicable law, (2) the Reorganized Debtor was hopelessly insolvent and that these conditions would continue indefinitely, and (3) therefore, the amount of the payments should revert to the Reorganized Debtor. The Bankruptcy Court agreed with the Reorganized Debtor on (1), specifically made no ruling on (2), and therefore, declined to grant the relief requested by the Reorganized Debtor as (3). It is this *Order Regarding Debtor's Motion Requesting Clarification of Confirmed Chapter 11 Plan* [Docket No. 100] (the "Clarification Order") that the Equity Committee seeks to appeal.

It is hard to imagine a more classic example of an interlocutory order. Here, the Bankruptcy Court granted one condition for relief, did not decide the second condition for relief,

---

[1] The *Third Amended and Restated Joint Plan of Reorganization* [Docket No. 534] (the "Plan"), confirmed by order dated August 10, 2001 (the "Confirmation Order").

and did not grant the relief. In effect, the Bankruptcy Court ruled on one issue in a multi issue case. The arguments of the Equity Committee that the Clarification Order is final are contrary to governing authority and inconsistent with the premises of the final order rule.

First, the Equity Committee asserts that pragmatic considerations dictate a more flexible approach to finality in bankruptcy cases. Perhaps this is true in a complex case involving scores of separate matters. But here, the Plan was confirmed more than four years ago and the Reorganized Debtor has emerged from bankruptcy. This is a plain vanilla two party dispute and is similar to an individual adversary proceeding in a bankruptcy case, to which normal standards apply. *See e.g. In re Ronald L. Natale*, 295 F.3d 375, 379 (3d Cir. 2002) ("In assessing the finality of a bankruptcy court order adjudicating a specific adversary proceeding, we apply the same concepts of appealability as those used in general civil litigation."). The Equity Committee does not contend, nor could it, that the order described above--which decided one of two issues and granted no relief-- is final according to traditional finality standards

Second, even under the more pragmatic approach, this matter has nothing to do with an ongoing bankruptcy case where finality is critical for the resolution of the overall case. As already noted, the Plan has already been confirmed and the issues involved are self-contained and will have no impact on plan or confirmation issues.

Finally, the Equity Committee has not shown any exceptional circumstances warranting leave to appeal. The situation is no different from a case where the court decides a legal issue in the course of ongoing proceedings. The issue here is *sui generis* and involves the interpretation of particular documents, and is most unlikely to arise again. It is far removed from a controlling question of law which has been decided differently by different courts. Determination of this issue should await conclusion of the proceedings.

2

## BACKGROUND

The Plan Documents[2] provide that the Reorganized Debtor and its parent company FINOVA Group Inc. ("FNV Group," and together with the Reorganized Debtor, the "Reorganized Debtors") will make payments on account of "Equity Interests" of 5% of their net cash after provision for payment of certain obligations and expenses ("Available Cash") *unless* the payments constitute "Impermissible Restricted Payments." An Impermissible Restricted Payment is one which would (i) render the Reorganized Debtors insolvent, (ii) be a fraudulent conveyance, or (iii) not be permitted under applicable law; in such a case, the Reorganized Debtor must retain the payment until the conditions precedent to payment have been satisfied. The Reorganized Debtors have been insolvent for some time and, as a result, have been setting aside 5% of the Available Cash in a separate account (the "Segregated Account"). However, while the Plan Documents are clear that no payments can be made to the holders of Equity Interests of FNV Group (the "Shareholders") if the conditions precedent are not satisfied, the Plan Documents are silent with respect to the treatment of the funds if the conditions will *never* be satisfied. Therefore, after it determined that such payments will always constitute Impermissible Restricted Payments and, as such, there is no reasonable chance that distributions could ever be made to Shareholders, the Reorganized Debtors filed a *Motion of the Reorganized Debtor for an Order Under Bankruptcy Code Section 1141 Clarifying Provision of Confirmed Plan*, dated April 1, 2005 [Docket No. 22] (the "Clarification Motion") seeking an order that the Reorganized Debtor "(i) may cease setting aside 5% of the Available Cash for the benefit of

---

[2] The Plan and the Indenture between The FINOVA Group Inc. and The Bank of New York, as Trustee, dated as of August 22, 2001 (the "Indenture") which was incorporated as part of the Plan pursuant to the Confirmation Order are collectively referred to as the "Plan Documents."

3

Equity Interests in FNV Group and (ii) may return the Available Cash in the Segregated Account to [the Reorganized Debtor] for use in its business to pay expenses, debts and other obligations."

Most of the Equity Committee's Motion for Leave to Appeal is a rehash of arguments which were discussed in more than 100 pages of briefs, and clearly rejected by the Bankruptcy Court. In ruling in favor of the Reorganized Debtors, the Bankruptcy Court reviewed the pleadings filed and interpreted the Plan Documents and concluded that "[t]he multitudinous arguments offered by the [Equity] Committee, for the most part, are either irrelevant or off the wall. The concept of forfeiture, subordination, constructive trust, sharing pari passu is all in gross conflict with the terms of the [P]lan and disclosure statement." Transcript at p.52, lines 16-20.[3] Moreover, contrary to assertions by the Equity Committee, the Bankruptcy Court concluded that the Plan Documents were clear, stating "I've spent a lot of time with the relevant documents. I don't think they're ambiguous and I think the debtor has it right." Transcript at p.52, lines 13-15.

Although the Bankruptcy Court approved the Clarification Motion, its ruling was limited to the extent that the Reorganized Debtor "is presently and will be forever insolvent." While the Reorganized Debtor submitted a detailed declaration of its Chief Financial Officer and previously filed documents[4] and brought a witness to the hearing on the Clarification Motion who was prepared to testify as to the Reorganized Debtor's insolvency and future financial

---

[3] Transcript of Hearing before the Honorable Peter J. Walsh on November 30, 2005 at 2:30 p.m. (the "Transcript"), a copy of which is attached as Exhibit B to the Motion for Leave to Appeal.

[4] These submissions showed that most of the Reorganized Debtor's assets had been liquidated, it was insolvent by more than $1 billion, its remaining non-cash assets would have to more than triple in value for the Reorganized Debtor to become solvent, and most of its assets consisted of older vintage airplanes and debt or lease instruments of fixed amounts.

4

condition, the Bankruptcy Court declined to make a finding with respect to the Reorganized Debtor's insolvency, instead holding that "[n]othing in this [Clarification Order] shall be construed as a finding that the [Reorganized] Debtors are or will forever be insolvent."
In this regard, the Bankruptcy Court did not find that the subject matter of the Clarification Motion was completely resolved or that it was not the proper forum for a determination on the Reorganized Debtor's solvency. In fact, the court stated that "but now that I've turned away [the Equity Committee's] – their legal argument, we have the issue of whether [the Reorganized Debtor] is forever insolvent. And until they say they agree with that, then I say somebody's got to prove it to me." Transcript at p. 63 at lines 20-24. As such, the Bankruptcy Court clearly acknowledged that the issues raised in the Clarification Motion were not completely resolved.

Finally, the Bankruptcy Court did not grant the relief requested in the Clarification Motion.[5] The Reorganized Debtor asked the Bankruptcy Court for permission to cease setting aside Available Cash and for a return of the funds held in the Segregated Account. The Clarification Order does not permit the Reorganized Debtor to do either.

## ARGUMENT

### I. THE CLARIFICATION ORDER IS NOT A FINAL ORDER

The Reorganized Debtor does not dispute the fact that this Court has jurisdiction to hear appeals "as of right" from final judgments, orders and decrees and, with leave of the Court, from other interlocutory orders and decrees. 28 U.S.C. § 158(a). However, given the fact that the Bankruptcy Court has not made a finding with respect to the Reorganized Debtor's insolvency, and has neither granted nor denied the relief sought by the Reorganized Debtor, the Clarification

---

[5] Counsel for the Reorganized Debtor specifically stated at the hearing that he did not believe that the order was a final order. Transcript p. 74 at lines 1-14.

5

RLF1-2984626-1

Order is clearly not a final order and, as such, the Equity Committee may not appeal without leave of the Court.

A.   **There is No Reason to Apply a More Flexible Approach to Finality in this Case.**

The Equity Committee relies heavily on *In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005) and *In re Northwestern Corp.*, 319 B.R. 68 (D. Del. 2005) for the proposition that this Court should take a more flexible and pragmatic approach to determining whether the Clarification Order is final. However, these cases are clearly distinguishable from the present case and, as such, the Equity Committee's reliance is misplaced. In *Armstrong*, the order in question denied confirmation of a debtor's bankruptcy plan based on the conclusion that the distribution scheme violated the absolute priority rule and in *Northwestern* the order in question denied a motion to lift the automatic stay based on a conclusion that proceeding is core and the Bankruptcy Court was within its discretion to deny enforcement of arbitration agreements. Importantly, both *Armstrong* and *Northwestern* arose *pre-confirmation* and affected the progress of their bankruptcy cases and the plan process itself. In stark contrast, the Reorganized Debtor confirmed its Plan more than four years ago and has emerged from bankruptcy. In addition, the present case is a two party dispute involving two issues, one of which, interpretation of a contract, was decided and one of which, insolvency, was not, and the facts of this case bear no resemblance to either *Armstrong* or *Northwestern* where the decisions had potentially far ranging effects on numerous parties.

This fact that this case, unlike *Armstrong* and *Northwestern*, arose post-confirmation is especially relevant given the Third Circuit's willingness to construe finality more broadly where the case is protracted, involves numerous parties with different interests, and could lead to a waste of resources if an appeal is delayed until after a plan is confirmed, "especially if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan." *In*

6

re *White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988); *Armstrong*, 432 F.3d at 511 (finding that flexibility is especially relevant to ensure that the Bankruptcy Court can "quickly resolve issues central to the progress of a bankruptcy.").

Here, there is no issue of an appeal being postponed until after the Plan is confirmed, or any concern regarding the waste of time and resources that might accompany such a delay. Also, because the bankruptcy case is completed, the issues raised in the Clarification Motion are obviously not central to the progress of a pending bankruptcy case. Finally, because the Plan has been confirmed and cannot be rewritten, there is no possibility of needing to re-evaluate the merits of the Plan if the appeal results in a reversal of the Clarification Order. Therefore, notwithstanding the fact that the Clarification Motion was heard by the Bankruptcy Court, none of the unique circumstances justifying a more flexible standard of finality in bankruptcy cases is present in this case. *See In re Jeannette Corporation*, 832 F.2d 43, 45 (3d Cir. 1987) (finding that while the Third Circuit has observed that unique circumstances attendant to bankruptcy appeals can permit a more flexible interpretation of finality, "this liberal construction explains the statute's underpinnings, it does not apply in situations unrelated to the special needs of bankruptcy litigation.").

**B.    The Finality of the Issues Raised in the Clarification Motion Needs to be Determined by the Same Standard as Used in General Civil Litigation.**

The Third Circuit has also imposed significant limitations on its willingness to adopt a more pragmatic approach to finality when it comes to individual actions within a bankruptcy case. Specifically, the Third Circuit has stated that "[d]espite that relaxed view of finality in the bankruptcy setting as a whole, the general antipathy toward piecemeal appeals still prevails in individual adversary actions." *Natale*, 295 F.3d at 378-79; *citing White Beauty*, 841 F.2d at 526. It is for this reason that the Third Circuit has concluded that, in assessing the finality of a

7

bankruptcy court order in a specific adversary proceeding, the more flexible view of finality does not apply and the court will apply the same standards for determining finality as are used in general civil litigation. *Natale*, 295 F.3 at 379.

The dispute between the Equity Committee and the Reorganized Debtor is similar in nature to an individual adversary proceeding within a bankruptcy case. Although the issues were brought on by motion rather than through the commencement of an adversary proceeding, the proceeding remains a two-party dispute as to the meaning of the Plan Documents with the Reorganized Debtor seeking specific relief if its view prevails. And as discussed above, none of the unique characteristics of bankruptcy justifying a more pragmatic view of finality are present in this case.

The Equity Committee does not, nor could it, show that the Clarification Order is final under the traditional standard. The Supreme Court has defined a "final decision" for purposes of appeal in general civil litigation "generally [as] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Interpreting *Catlin*, the Third Circuit has described a final decision as "one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, *ministerially*, the execution of the decree." *Penn West Associates, Inc. v. Katherine Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (citations omitted). As discussed above, the Clarification Order did not dispose of the entire subject, give all of the relief contemplated or leave nothing left to be done by the Bankruptcy Court. Rather, the Bankruptcy Court specifically stated that the Clarification Motion was approved only to the extent that the Reorganized Debtor is and will forever be insolvent and it did not make the determination of the

Reorganized Debtor's insolvency. Without the determination regarding solvency and related financial issues, the Reorganized Debtor is not entitled to the relief that it sought in the Clarification Motion. Clearly the Clarification Order cannot be considered final under these circumstances. Moreover, notwithstanding the fact that the Reorganized Debtor believes that its present and future insolvency is clear and obvious, such a determination cannot be classified as "ministerial."

C.  **Even if the Pragmatic Standard is Applied, the Clarification Order is Not a Final Order.**

Under the more pragmatic approach set forth by the Third Circuit, the district court can consider a variety of factors in determining whether an order is final, including but not limited to (1) whether the order leaves additional work to be done by the Bankruptcy Court; (2) whether the order implicates purely legal issues; (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate; (4) the necessity for further fact-finding on remand to the Bankruptcy Court; (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy. *In re West Electronics, Inc.*, 852 F.2d 79, 82 (3d Cir. 1988); *U.S. v. Pelullo*, 178 F.3d 196, 200-201 (3d Cir. 1999).

An application of these factors to the present case clearly shows that the Clarification Order is not a final order. First, as discussed above, because the Clarification Motion was approved only to the extent that the Reorganized Debtor is now and will always be insolvent, and the Bankruptcy Court did not make a determination regarding the Reorganized Debtor's insolvency, the Clarification Order left additional work – the determination of insolvency – to be done by the Bankruptcy Court. Second, the Clarification Order does not implicate purely legal issues because it involves the interpretation of legal documents and requires the factual determination of insolvency. Third, the Third Circuit has indicated that the most important of

9

the factors is the impact of the assets on the bankruptcy estate and because the Reorganized Debtor is not in bankruptcy, the Clarification Order has no impact on the assets of a bankruptcy estate. *See Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 98 (3d Cir. 1988). In addition, the Clarification Order actually preserves the status quo with respect to the Segregated Fund and the Reorganized Debtor's obligations to retain 5% of Available Cash until there is a determination on the Reorganized Debtor's insolvency so the Clarification Order has no impact on the relationship among creditors and the Shareholders, and does not affect the distribution of any funds. Fourth, as discussed above, there is clearly more fact finding necessary with respect to the Reorganized Debtor's insolvency. Finally, judicial economy will not be promoted by allowing an appeal of the Clarification Order at this time. Even if this Court heard the appeal on the legal issues in the Clarification Order, the Bankruptcy Court could still make a determination on insolvency thereby leading to the possibility of duplicative appeals – first from the approval of the Clarification Order and second from the determination of insolvency. This type of "inefficient use of judicial resources is as objectionable in bankruptcy appeals as in any other field." *Jeannette*, 832 F.2d at 45; *In re Meyertech*, 831 F.2d 410 (3d Cir. 1987).

## II.  LEAVE SHOULD NOT BE GRANTED

Because the Clarification Order is not a final order, the only way that the Equity Committee can appeal at this time is if this Court grants leave to hear the appeal pursuant to 28 U.S.C. § 158(a)(3) and Rule 8003 of the Federal Rules of Bankruptcy Procedure. The Reorganized Debtor agrees with the Equity Committee that, because Section 158(a) fails to provide criteria for determining when leave to appeal should be granted, courts faced with interlocutory appeals in a bankruptcy context have applied, by analogy, the standards set forth in 28 U.S.C. § 1292(b). *See e.g. In the Matter of Magic Restaurants, Inc.*, 202 B.R. 24, 26 (D. Del.

10

1996). Specifically, under § 1292(b), "leave to file an interlocutory appeal can be granted when the order at issue (1) involves a controlling question of law upon which there is (2) substantial difference of opinion, and (3) when immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* (*citing First American Bank of New York v. Century Glove, Inc.*, 64 B.R. 958, 962 (D. Del. 1986)). Moreover, the Third Circuit does not view interlocutory appeals with any flexible concept of finality; rather, "an appellant must establish that *exceptional circumstances* justify a departure from the basic policy of postponing review until after the entry of final judgment."). *In re Edison Brothers Stores, Inc.*, 1996 U.S. Dist. LEXIS 9061, *9 (D. Del. 1996) (emphasis added).

An application of these factors to the present case clearly shows that this Court should not grant the Equity Committee's Motion for Leave to Appeal. First, there is not so much a question of "controlling law," but rather the application of well-established law of contract interpretation to the analysis of particular legal documents and the situation is most unlikely to arise again. However, even if there is a controlling issue of law, the Equity Committee must *also* demonstrate that "exceptional circumstances" exist which justify the need for an immediate review. *Magic*, 202 B.R. at 26 (concluding that "a party seeking leave to pursue an interlocutory appeal must demonstrate, in the context of the factors cited above, some circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review."). Second, although the Equity Committee may disagree with the Bankruptcy Court's interpretation of the Plan Documents, there are, in fact, no other judicial opinions directly on point and, as such, no judicial conflict. Finally, the ability to appeal the Clarification Order at this juncture will not materially advance the ultimate termination of litigation. Even if the Equity Committee wins on appeal, it would have no right to the funds in the Segregated Account; rather,

the Reorganized Debtor would just be required to continue retaining funds in the Segregated Account as it had always been doing. The Equity Committee would need to bring its own adversary proceeding if it wanted to compel a turnover of funds, and as such, litigation on this issue, and possible future appeals, would be ongoing. Moreover, even though the Equity Committee asserts that determining this issue now would save time and avoid having to resolve other factual and legal matters, because (i) the dispute is only over money and the funds in question have always been and continue to be retained in the Segregated Account and (ii) the Clarification Order does not grant any relief to the Reorganized Debtor and actually preserves this status quo that has been in place for a number of years, the Equity Committee "has not sufficiently established an urgency that sets this case apart from the typical case." *Id.*

Therefore, because there is no harm to any party to properly conclude the matter in the Bankruptcy Court, at which point the Equity Committee may appeal, as of right, from a truly final order, this Court should not grant the Equity Committee leave to appeal at this juncture.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the reasons set forth herein, the Reorganized Debtors oppose the Equity Committee's Motion for Leave and respectfully request that this Court for (i) strike the appeal of the Equity Committee on the ground that it is not a final order subject to appeal as of right under 28 U.S.C. § 158(a)(1), (ii) deny the Equity Committee's request for leave to appeal pursuant to 28 U.S.C. § 158(a)(3) and (iii) grant such other and further relief as may be just and proper.

Dated: February 24, 2006
       Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Telecopy: (302) 651-7701

-and-

Jonathan M. Landers
Janet M. Weiss
Jessica I. Basil
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Telecopy: (212) 351-4035

Co-counsel to the Reorganized Debtor

13

RLF1-2984626-1